C. H. REED & Co. *v.* D. F. BEALL, sheriff and tax-collector of Tishomingo county.

1. LICENSE TO RETAIL: SUBJECT TO TAXATION, TO WHAT EXTENT. —By Art. 13, § 3, Rev. Code, p. 74, the fiscal year commences on the 1st day of May, and all taxable property owned by any person before that day shall be assessed and taxed for the succeeding year. By the Act of December 5, 1865, on every license granted under the provisions of the law to retail spirituous liquors, etc., in an incorporated town, whose population is less than one thousand, a tax of $100 shall be assessed for the State. The act contains no provision *exempting* licenses issued *previous* to its passage, and the Legislature knowing what the general law was· at the time of its passage, it is presumed, in the absence of such exception, that the Legislature intended to tax them. *Sheewalter* v. *Brown*, 35 Miss. 422; 16 Howard U. S. S. C. 369; 1 Black. 436.

C. H. Reed & Co. v. D. F. Beall, sheriff and tax-collector of Tishomingo Co.

2. SAME: SAME: SUCH LAWS NOT UNCONSTITUTIONAL. — Retrospective laws of States, which do not impair the obligation of contracts, are not within the inhibitions of the Constitution of the United States.

3. SAME: LICENSES NOT CONTRACTS, BUT FRANCHISES. — Licenses granted by the boards of police to retail in an incorporated town of less than one thousand inhabitants, constitutes no contract between the State and the individual licensed, although such license issues under authority of State laws. They are merely franchises — creatures of the law, and peculiarly the objects of the taxing power. 4 Wheaton, 690; 12 Mass. 252; 4 Peters, 256.

4. SAME: SAME. — Notwithstanding such licenses are franchises and private property, which cannot be taken away without just and full compensation, nor their enjoyment interfered with, yet it is competent for States to pass laws impairing their value. However absolute the rights of an individual may be, it is still in the nature of these rights, that they must bear a portion of the public burthens, and that portion must be determined by the Legislature. *Providence Bank* v. *Billings*, 4 Peters, 514; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420.

5. SAME: SAME. — The liquor laws, Code 74, Acts of November, 1857, and December 5, 1865, are to be construed all together, and as intending so to regulate taxation as to provide revenue both for State and county out of taxable property, including retail licenses; but when the county charges and receives its price for such license, this power, as to the county, is exhausted, and cannot be again exercised.

6. SAME: CASE IN JUDGMENT. — On 4th September, 1865, Reed & Co. obtained license to retail vinous and spirituous liquors in the town of Corinth (containing less than one thousand inhabitants), by order of the Board of Police of Tishomingo county, for which they paid $202.50; said license was for twelve months, and granted under the provisions of Rev. Code, arts. 3, 4 5, and 6, p. 197. On the 5th December, 1865, three months after the grant of the license, the Legislature of Mississippi passed a revenue act, authorizing a tax of $100 on every license so granted, to be assessed and collected for State purposes, by order of the boards of police. Sec. 5 of said act provides, also, that all the subjects of taxation in the act mentioned shall be liable to all county taxes, which shall be lawfully imposed, etc. On the 10th October, 1866, after the expiration of Reed & Co's. license, the board of police under said act levied an additional tax of one hundred and fifty per cent upon the State tax, upon Reed & Co.'s license amounting to $150. *Held* — That the Act of December 5th, 1865, was constitutional, impaired the obligation of no contract, interfered with the enjoyment of no franchise; that Reed & Co.'s license was subject to taxation for *State*, but *not* for *county* purposes.

7. CHANCERY PRACTICE. — It is a well-settled rule of chancery practice, that when the demurrer is too general — applies to the whole bill when it is good to only a part, it will be overruled. It cannot be good as to part, and bad as to part. Story's Eq. Pl. § 443; 1 Daniel's Ch. Pl. & Pr. p. 608; 5 Johns. Ch. Rep. 184.

ERROR to the Chancery Court of Tishomingo county. Hon. W. D. Bradford, chancellor.

*Inge & Beene* for appellants.

No State can pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts. Const. U. S., art. 1, § 10; Const. Miss., art. 1, § 10.

Appellants, on 4th September, 1865, obtained a license from the Board of Police of Tishomingo county, Miss., to retail vinous or spirituous liquors in the town of Corinth for twelve months from date. Corinth had a population less than one thousand. The license was issued in accordance with the provisions and requirements of the Rev. Code, ch. 20, pp. 197 *et seq.*, all of which were strictly complied with.

Did appellants acquire any rights by so doing? If so, what were they? Was the State placed under any obligations or restrictions thereby, and if so, what were those obligations and restrictions? By complying with the law as it then existed, and paying the tax for the license as fixed by the board of police, they acquired the right to retail vinous and spirituous liquors for the space of twelve months, and a contract was thus created between the appellants and the State; the honor of the State is pledged to protect them until the franchise expire. *Fletcher* v. *Peck,* 6 Cranch. 87; *Saterlee* v. *Mattheson,* 2 Peters, 380; *Baltimore & Susquehanna R. R. Co.* v. *Nesbit,* 10 Howard 395; *Bridge Proprietors* v. *Hoboken Company,* 1 Ward, 116. The case at bar comes directly under the above legal propositions. At that time there was no law for taxing a license; the only requirement of law was the payment of the sum fixed by the board of police, and when the license issued, the faith of the State was pledged to protect them in that right, *without any further taxation* or *restriction.* If they could require *any* additional taxation, there would be no limit, and such right might be exercised to an extent so as to destroy all benefits of the license to appellants. The license was granted on 4th September, 1865, for twelve months, and on 5th December, 1865, the legislature passed the act in question, by which a

tax of $100 was imposed on appellants' license (page 225 of Acts); and it is provided in said act that all the subjects of taxation mentioned shall be liable to county taxes. Does not these additional taxes impair the obligation of contracts?

It cannot be that the legislature intended to embrace licenses issued previous to the passage of the act. The State is not at liberty to break its contract (*Green* v. *Biddle*, 8 Wheaton, 65; *Bronson* v. *Kinzie*, 1 Howard, 311; *Gordon* v. *South Fork Co.*, 1 McAll, 513); cannot disturb rights already vested. *Woodruff* v. *Trappnall*, 10 Howard, 191; *Paup* v. *Drew*, 10 Howard, 218; 8 Wheaton, 1; 1 Yerger, 306; 2 Gray, 1; 7 Cranch, 165; 4 Wheaton, 519; 1 Kent, 455; 7 Conn. 44; 10 Conn. 541; Sedgwick on Statutory and Constitutional Law, 625; 17 Johnson's Rep. 215.

These authorities further show that a franchise is private property, and cannot be taken without just and full compensation, nor subjected to conditions which tend to clog or impair their value. If the Act of December 5, 1865, is held to apply to appellants' license, it will be obnoxious to this rule, and be unconstitutional.

This additional tax is substantially an addition to the price of license already paid for and granted, and is inoperative, unconstitutional, and void. *Orton* v. *Brown*, 35 Miss. 427, expressly decides this.

The law of the place at the time the contract was made, enters into and forms a part of the contract, and the validity nature, and construction of the contract must be governed by those laws. *Cox* v. *United States*, 6 Peters, 172; *Bank of United States* v. *Daniel*, 12 Peters, 32; *Webster* v. *Massey*, 2 Peters, 157; 2 Paine, 437; 1 Gall, 371; 1 S. & M. 176.

If a contract, when made, is valid by the laws, as then expounded, understood, and acted upon by the departments of the government, and administered in its courts, its validity cannot be impaired by subsequent legislation or decision of courts altering the construction of the law. *Gelpeck* v. *City of Dubuque*, 1 Wall. 175–205.

The presumption of fairness between the State and appellants,

as contracting parties, is not doubted (*Swain* v. *United States*, Dev. 61); but the result would be different if appellants were held liable to additional tax under Act of December 5, 1865. Such a construction, we claim, would make said act unconstitutional, which we do not hold it to be.

If a part of a State law is unconstitutional, such part may be disregarded. *Bank of Hamilton* v. *Dudley*, 2 Peters, 526; 17 Howard, 201. Laws may also be void as applied to particular cases, but valid as to others. *Golden* v. *Price*, 3 Wash. C. Ct. 318.

Counsel for appellee contend that our remedy was before the board of police by way of objections to the assessment under p. 77, art. 26, § 9, Rev. Code. Ordinarily there might be some force in this argument; but this tax was levied by the board long after our license had expired, and if the law required our attendance on said board in September, 1866, it could, with the same propriety, require it as long as time lasts. The law will not presume any one to be a wrong-doer. *Averill* v. *Williams*, 1 Dev. 501. Nor will the notice of an illegal act make such act valid. *Wilson* v. *Mason*, 1 Cranch, 45. If the license was not taxable, appellants had no right to suppose, or no notice of the fact, either constructive, implied, or otherwise, that it was taxed such assessment being illegal.

If the law taxing the license is unconstitutional, the enforcement of it should be stayed by the courts. 1 Kent, 498–9.

We insist the court below erred in dissolving the injunction. If the act of the board of police (in making the assessment) be called a judgment, then it is void; for we had no notice of it, and our remedy is by injunction in Chancery. *Caruthers* v. *Hartsfield*, 3 Yerger, 366; *Creed* v. *Payne*, 1 Hogan, 79; *Dunn* v. *Dunn*, 4 Paige, 425.

*Reynolds, Boone, & Reynolds* for appellee.

The only point in the case is as to the constitutionality of the Act of December 5, 1865, taxing licenses to retail spirituous liquors, etc.

The license of appellants was granted a few days before its passage. The act took effect from and after its passage.

The law is not *ex post facto*, because these laws refer only to crimes. *Calder and Wife* v. *Ball and Wife*, 3 Dallas, 386; *Carpenter* v. *Commonwealth of Pa.*, 17 Howard, 456.

If the act in question is *retrospective*, which is not admitted, there is no prohibition against such laws. 17 Howard 456; 3 Dallas, 386.

The act does not impair any contract. The amount paid for the license was paid for a *privilege* not enjoyed by all citizens; this privilege is not impaired by the act, only burthened additionally to the extent of the tax; and even if taxed to the full extent of the profits of the business, this would not make the act unconstitutional. *Bank* v. *Billings*, 4 Peters, 514. The license is only a franchise. Bouvier's Law. Dict.; *Orton* v. *Brown*, 35 Miss. 427.

A State has the right to tax any business or calling; this is the effect of the act in question. *Nathan* v. *The State of Louisiana*, 8 Howard, 80.

Contended that the act was constitutional, and applied to all licenses operative on the 1st of May, and that if appellants' defence is good, it should have been made before the board of police, and had the assessment roll corrected, if erroneous. The case of *Orton* v. *Brown* was different from this: in the former there had been no assessment made, nor was there any authority of law for collecting the tax. The levy was made without any authority. Though the legislature uses the word license in the Act of December 5, 1865, it is clear they intended it as a tax upon the business. To hold otherwise would be to play upon words.

SHACKELFORD, C.J., delivered the opinion of the court.

The appellants filed their bill on the 15th day of June, 1867, in the Chancery Court of Tishomingo county.

The bill alleges, that on the 4th day of September, A.D. 1865, the appellants obtained a license to retail vinous and spirituous liquors in the town of Corinth in said county, a town

of less than two thousand inhabitants; said license was issued by order of the board of police of said county, and that they paid for the same the sum of two hundred and two and a half dollars, and that it was for the term of twelve months.

That said license was issued under the provisions of the Revised Code, p. 197, chap. 20, articles 3, 4, 5, and 6.

They further allege that by virtue of this license they acquired a vested franchise or right to sell vinous and spirituous and malt liquors in said town of Corinth for the space of twelve months from the date of said license (having paid the annual sum in lieu of taxation), there being no law in existence at that time in this State taxing such licenses. That on the 5th day of December, 1865, three months after appellants obtained their license, the legislature passed a revenue act, by which they levied a tax of one hundred dollars upon every license so granted in every incorporated town in the State, of less population than one thousand inhabitants, as had the town of Corinth at that time. That in section 5th of the said act it is enacted that all the subjects of taxation in said act mentioned shall be liable to all county taxes which shall be lawfully imposed by the boards of police, in addition to the taxes imposed by this act.

That on the 10th of October, 1866, after the expiration of appellants' license, the board of police, under said act, levied an additional tax of one hundred and fifty per cent upon the State tax, upon appellants' license, making the additional sum of one hundred and fifty dollars; that said license was not liable to said taxes, the law levying them was prospective, and went into effect from and after its passage, and if attempted to be applied to licenses granted before its passage, would be unconstitutional, because it would be a law impairing the obligations of contracts or divesting rights already vested.

That the defendant in error was about to collect said tax by levy and sale of appellants' property. An injunction was obtained.

The defendant in error demurred to the bill, the court sus-

tained the demurrer, and on motion dissolved the injunction and dismissed the bill.

The case is brought into this court by writ of error for revisal.

There are two assignments of error: 1st. That the court erred in sustaining the demurrer of defendant in error. 2d. That the court erred in disssolving the injunction and dismissing the bill of plaintiffs in error.

It will be observed that the license issued to plaintiffs in error bears date on the 4th day of September, A.D. 1865, and that the license was granted to plaintiffs in error by the Board of Police of Tishomingo county, under and by virtue of the provisions of the Revised Code, article 3, chap. 20, p. 197, for which plaintiffs in error paid two hundred dollars, which sum, under article 5, same chapter, p. 198, had to be paid into the county treasury.

The act of the legislature under which the license of plaintiffs in error was taxed was passed on the 5th of December, A.D. 1865. Pamphlet Acts, 1865, p. 216.

The act is correctly stated in the bill of plaintiffs in error.

Counsel for plaintiffs in error insist that the demurrer to their bill should have been overruled, and the injunction made perpetual.

1st. Because the Act of December 5th, 1865, is prospective entirely, and was not intended by the legislature to affect licenses to sell spirituous liquors, etc., previously granted; and that if the said Act of the 5th of December, 1865, was intended to reach such cases as plaintiffs in error's, the same is retrospective or retroactive, and therefore unconstitutional and void, as it impairs the obligation of contracts.

In support of the first objection, counsel say that the act specially provides that the same " shall take effect and be in force from and after its passage," and therefore the license in question is exempt from its operation.

The language of the act under consideration is, " that on each and every license granted under the provisions of the law to retail spirituous liquors, etc., a tax of one hundred dollars shall

be assessed for the State when the population of a town is under one thousand inhabitants." The question whether the license in question is exempted from the operation of this act has to be determined by the general law of the code, regulating the time when property is made liable to taxation.

By article 13, § 3, of Revised Code, p. 74, the fiscal year shall commence on the first day of May, and all taxable property brought into the State or acquired by any person before the first day of May shall be assessed and pay taxes for the succeeding year.

It seems clear that there was no necessity that the act should contain a specification when licenses should be liable to taxation, as the foregoing article fixes the time of liability.

If the legislature did not intend by this act that licenses issued previous to the passage of the Act of December 5th, 1865, should not be subjects of taxation for the fiscal year 1867, there should have been a clause inserted therein, specially excepting them, as it is presumed the legislature knew what the general law was at the time of the passage of the act.

There being no exception provided in the act, it is manifest that the legislature intended that licenses issued previous to the passage of the act in question should be taxed as any other property of plaintiffs in error, in their possession, or owned by them, on the first day of May, 1866.

This court, in the case of *Shewalter & Co.* v. *Brown*, 35 Miss. p. 422, held that sales of slaves, mules, and horses sold by Shewalter & Co., during the months of November and December, 1856, and January, February, and March, 1857, were subject to taxation by virtue of an Act of the legislature passed on the 2d day of February, 1857, taxing such sales three-tenths of one per cent, made by any trader or other person keeping and offering them for sale as merchandise, the legislature considering such sales as property subject to State taxes. The court in that case reversed the proceedings of the sheriff, because he collected the taxes before they had been assessed by the assessor, having collected the tax immediately after the

passage of the act, and says that "there can be no doubt but that the amount of sales in question was liable to taxation as well for county as for State purposes."

The statute of the 2d February, 1857, "took effect from and after its passage."

If this court was correct in its view of the Act of the 2d of February, 1857, in its construction of it, in the case of *Shewalter & Co.* v. *Brown*, there can be no question as to the intention of the legislature in the Act of December, 1865, to tax all liquor licenses issued before as well as after the passage of the act in question.

The Act of 5th December, 1865, and the Act of February 2, 1857, contain the same provisions as to time when they shall go into effect; the subjects of taxation in each case or act were not subjects of taxation previous to the passage of the respective acts.

We come now to the consideration of the next objection urged by counsel why the demurrer of the State should not have been sustained: "that if this Act of 5th December, 1865, was intended to reach such cases as that of the plaintiff in error, that the act is unconstitutional and void, because it impairs the obligation of contracts."

Counsel state, at the time the license in question was issued, there was no law taxing the same, and that "the only requirement of the law was the payment of the sums fixed by the boards of police; and when the license was issued, the faith of the State was pledged to protect them in that right, without any further taxation or restriction."

We have shown, if the license in question was subject to taxation under the Act of 5th of December, 1865, that it was taxable by operation of the general law in the Revised Code, rendering all property, etc., acquired before the 1st of May of each year, subject to taxation for that year, and collectable as taxes for the succeeding year.

Suppose we admit, for the purpose of determining the question raised by the argument of counsel in this connection, that the Act of 5th of December, 1865, contained an express pro-

vision that all licenses issued for the sale of spirituous liquors, etc., previous to the passage of the act, should be liable for State and county taxes for the year 1865 — would the position of counsel be tenable ?

We think not. That there existed general power in the legislature to pass retrospective laws, is too well settled to admit of a doubt at this time. Retrospective laws of States, which do not impair the obligation of contracts, are not within the inhibitions of the Constitution of the United States.

This has been repeatedly decided by the Supreme Court of the United States. In the case of *Watson et al.* v. *Mercer*, 4 Peters, 110, the Supreme Court of the United States says, "As to this point, it is clear that this court has no right to pronounce an act of the State legislature void, as contrary to the Constitution of the United States, from the mere fact that it divests antecedent vested rights of property." The Constitution of the United States does not prohibit retrospective laws generally, but only *ex post facto* laws, which the Supreme Court of the United States has repeatedly held to be applicable to criminal or penal laws. *Colder et ex* v. *Bull et ex p.*

Upon what grounds do counsel for plaintiff in error rely, or upon what features of the act, to show the act in question to be unconstitutional, as impairing the obligation of contracts ? Only that the license in question "was their franchise and private property, which could not be taken without just and full compensation."

There was no attempt of the legislature, in passing the act in question, to take from persons their licenses or franchises obtained previous to the passage of the act; at all events, we are unable to perceive in what particular the enjoyment of the franchise of plaintiffs in error was obstructed by the operation of the Act of December 5th, 1865, under consideration.

So far as the record shows, the plaintiffs in error sold liquor under their license to the time it expired by law and its terms.

This being true, the only ground left for contending this Act to be unconstitutional and void as to the plaintiffs in error is, that the license was intended to be, and was, taxed by the State

and county, and the payment of these taxes assessed " would impair its value as a franchise vested."

They further insist " that any law which clogs the profits or .imposes conditions tending to diminish or impair its value as a franchise vested, destroys to that extent the interest in the property, and is therefore void." The substance of the argument in support of this position is this: That any act of the legislature which should in the least impair its value, by depriving plaintiffs in error of any profits that might arise from it, would be unconstitutional and void.

Counsel show by their admissions in their argument upon this point that the legislature " had unquestionably the right " to tax their income arising from their sales of liquor, etc., under their licenses, or their gross sales, or their property employed in their exercise of that license, or on all of the items mentioned.

It seems that such taxes would certainly diminish the profits arising from their franchise, and the act would be equally retroactive in its effects. If the position is correct, that by taking out the license before the passage of the act in question exempted it from all further taxation, of course the legislature could not legally tax the income or profits of plaintiffs in error's business, etc. As it is admitted by counsel that the legislature could legally pass an act taxing the income, etc., of plaintiffs in error to any extent they might see proper (for there is no limit to this power), why could not the legislature legally enact that all licenses issued and to be issued according to law should be specifically taxed to any amount within their legislative discretion? The owner of the license has to pay the tax, in whatever shape or form it is assessed.

Counsel contend that when they purchased the license in question, a contract was made and entered into with the State, by which the faith of the State was pledged to permit them to enjoy their franchise, without any tax or burthen upon the license during the continuance of said license.

In determining this position, that there was a contract with the State involving its faith, we shall have to look at the statute

under which the license in question was taken out by plaintiffs in error.

The license in question, it will be remembered, was taken out in the town of Corinth, a town of less than two thousand inhabitants.

By the provisions of the third article of the Revised Code, p. 197, of the General Liquor Law, this power of issuing licenses in towns of less than two thousand inhabitants is vested in the boards of police. The boards of police, by said art. 3, have the power "to assess and collect such tax" on licenses to be granted by them as they may see proper, within certain limits specified in article 3. This act delegates to said boards discretionary powers, which they may exercise under certain circumstances, even to revoke such licenses, etc. The taxes assessed on said licenses so granted by the boards of police go into the treasuries of the counties of the State, and not in any cases were the taxes claimed by the State.

It is true that the license in question was granted under the authority of a law of the State, and for which they paid into the treasury of Tishomingo county two hundred dollars — the amount assessed as a tax on the same. All laws made by a State granting powers and privileges to corporations and individuals are not necessarily contracts; a contract must have mutuality, and the terms of the contract specified in the same. The license in question from the board of police of Tishomingo county to plaintiffs in error made no contract between the State and the plaintiffs in error that the license or the individuals obtaining it should not be taxed by the State; all that was conferred by the said license was to sell vinous and spirituous liquors in the town of Corinth for twelve months from the date of the same. It is admitted that the license in question was a franchise, but it is insisted that their privileges under it have been abused under the Act of December 5th, 1865.

Franchises being the creatures of the law, and peculiarly the objects of the taxing power, are not exempt from taxation, unless it is specially provided against by the act creating the franchise. 4 Wheaton's S. C. Rep. p. 690; 12 Mass. Rep. 252; 4 Peters' S.

C. Rep. p. 256.   There being nothing in the law delegating the power to the boards of police of the State to grant such licenses as the one under consideration, or in the license itself, exempting it from further taxation. by the State, can it be exempted by the implied contract alleged to have been made with plaintiffs in error, as previously stated herein?

The counsel for plaintiffs in error have cited us to numerous decisions of the Supreme Court of the United States upon the prohibitory clause of the Constitution of the United States forbidding States from passing laws impairing the obligation of contracts, and insist that they are decisive of the case before us, and are conclusive authority here.   This last assertion we unqualifiedly admit, and we shall so regard them, if they are upon the same point and decide the same question, presented in the case under consideration.   It is proper for us, we conceive, to examine some of the cases and compare the facts with those of the case at bar, that we may ascertain what influence these decisions should have upon us in the determination of the questions raised by the record in the case before us.   One of the cases relied upon with most confidence by counsel is the case of *Gordon* v. *Appeal Tax Court*, 3 Howard's S. C. Rep. p. 341.   The decision in this case turned upon the construction of an act of the legislature of Maryland continuing certain bank charters of that State, requiring them to pay large sums of money, etc., for the privilege of banking further under their charters about to expire, and providing further, if they accepted the terms of the act, " that the faith of the State is pledged not to impose any further tax or burthen upon them during the continuance of their charters under this act."   The State passed an act to further tax these banks, and attempted to collect the tax; which was resisted, and the case was brought to the Supreme Court of the United States.   The court held that this provision of the act (under which the bank continued its charter by accepting the terms of the act) exempting them from further taxation was a contract, and that further tax upon them during the continuance of the charters was illegal, and impaired the obligation of contracts.   There is no power delegated by the provisions of the

General Liquor Law (Revised Code, p. 197) to the boards of police, authorizing them to pledge the faith of the State that the parties taking out licenses under said law should not be further taxed. It would be going very far to hold that there was an implied contract in every liquor license so issued, pledging the faith of the State that the license should not be further taxed. We can perceive no analogy between the case of *Gordon* v. *Appeal Tax Court* and the case at bar. In 1845 the legislature of the State of Ohio passed a general banking law, the 59th section of which required the officers of every bank, whose charter was issued in pursuance of said law, to make semi-annual dividends; and the 60th section required them to set off six per cent of such dividends for the use of the State, which sum or amount so set off should be in lieu of all taxes to which the company or the stockholders therein would otherwise be subject. In 1851 an act was passed, entitled "An Act to tax Banks, and bank and other stocks, the same as property is now taxable by the laws of the State." An attempt was made to collect the taxes assessed under the law of 1851.

The Supreme Court of Ohio sustained the law of 1851 as constitutional, and held that the banks of the State should pay the tax. The Piqua Branch of the State Bank of Ohio took the case to the Supreme Court of the United States, and the Supreme Court of the United States reversed the decision of the Supreme Court of Ohio, and held that the first law of 1845 was a contract founded on a consideration exempting the banks from further taxation. *Piqua Branch, etc.,* v. *Knoop,* 16 Howard's S. C. Rep. p. 369.

The Supreme Court of Ohio refused to follow the decision, and the question was again before the Supreme Court of the United States, and was reaffirmed in the case of *Jefferson Branch Bank* v. *Skelley,* 1 Black's S. C. Rep. p. 436. After referring to the cases of *Gordon* v. *Appeal Tax Court* and the *Piqua Branch* v. *Knoop,* the Judge delivering the opinion of the court says: "In every case the vital importance of a State's right to tax was considered, and the relinquishment of it by a State has never been presumed; the language of the court has

always been cautious, and affirmative of the right of the State to impose taxes, unless it has been relinquished by unmistakable words clearly indicating the intention of the State to do so. This court has always said and acted upon it."

These views are a reiteration of the sentiments of the Supreme Court of the United States in the case of *Providence. Bank* v. *Billings*, 4 Peters, p. 561.

In all the cases decided by the Supreme Court of the United States, from the very earliest period down to the case of *Jefferson Branch Bank* v. *Skelley*, 1 Black, p. 436, it will appear that a valid consideration was paid in every instance in which we find judgment of that court declaring a law of a State invalid, as impairing the obligation of contracts, where the State attempted to abrogate a right vested under a previous statute.

The right of taxation, like the right of eminent domain, is a high prerogative of sovereignty, and ought not to be surrendered. In the case of the *Providence Bank* v. *Billings*, the learned counsel who argued the case for the Bank assumed the position in their argument, "that the charter restrained the State from passing any act which may directly impair the profits of the Bank;" and again, " that a power, therefore, which may in effect destroy the charter is inconsistent with it, and is impliedly renounced by granting it. Such a power cannot be exercised without impairing the obligation of contracts, and that it might be so wielded as to defeat the purpose for which the charter was granted."

In answer to this argument the court says " the sovereignty of a State extends to everything which exists by its own authority, or is introduced by its permission," and that " any privilege which may exempt it from the burthens common to individuals does not flow necessarily from the charter, but must be expressed in it, or it does not exist."

" We must look for the exemption in the language of the instrument, and if we do not find it there, it would be going very far to insert it by construction.

" The taxing power is of vital importance; that it is essential to the existence of government, are truths which it cannot be

necessary to affirm. They are acknowledged and assented to by all."

It would seem that the relinquishment of such a power is never assumed. We will not say that a State may not relinquish it; that a consideration sufficiently valuable to induce a partial release of it may not exist; but as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon does not appear;" and again, "the power of legislation, and consequently of taxation, operates on all persons and property belonging to the body politic." "This is an original principle, which has its foundation in society itself; it is granted by all, for the benefit of all." "It resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it, in any manner, is granted to individuals or corporate bodies."

"However absolute the right of an individual may be, it is still in the nature of this right that it must bear a portion of the public burthens, and that portion must be determined by the legislature."

Again, the position assumed by counsel for plaintiffs in error, that the act in question is unconstitutional and void as to them, on account of its retroactive effects upon the profits of their business, by forcing them to pay the State tax of one hundred dollars additional tax upon their license, which was not a tax upon it at the time they procured it, is fully met by the decision of the Supreme Court of the United States in the case of *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420. We deem it only necessary to present the points decided. . The Charter of the Charles River Bridge corporation not containing any express contract that the State of Massachusetts would not grant a charter for another bridge to be built to the injury of the Charles River Bridge Company, the Court held that no such contract could be implied, and that the law empowering another corporation to build and maintain another bridge, which, after a certain time and under certain condi-

tions, was to be a free bridge, so near the Charles River Bridge as practically to deprive it of its tolls, was not a law impairing the obligation of contracts.

The law of the Code under which the license in question was taken out by plaintiffs in error does not restrict the boards of police in the exercise of the licensing power. They can grant any number of licenses in an incorporated town of less than two thousand inhabitants.

It seems to us that the plaintiffs in error could contend with as much reason and force that the board of police of Tishomingo county could not issue another license to a citizen of Corinth after the issuance of the license to plaintiffs in error on the 4th of September, 1865, as the issuance of another license would necessarily injure the profits and business of plaintiffs in error's drinking saloon, as to insist that the State, for the same reason, is restrained from specifically taxing the license in question, or rather their business in another shape. The legislature of a State can at any time, by the exercise of its sovereign power, resume any portion of its sovereignty delegated to municipal corporations, or assert its taxing power when it has been relinquished.

The legislature, by the General Liquor Law of the Revised Code, p. 197, delegated to corporate authorities of a population of two thousand inhabitants the exclusive right to issue licenses to sell spirituous liquors in any quantities, and the taxes arising therefrom were either to go into the town treasuries or charitable institutions mentioned in the act.

The legislature, by the Act of the 14th of November, 1865 (Pamphlet Acts, p. 157), materially changed the law of the Code, by granting to all incorporated towns or cities of the State the exclusive authority to issue licenses within their corporate limits, whether there are two thousand inhabitants in the town, or not; and provides that the parties licensed by said authorities shall be liable to all State and county taxes which may be imposed from time to time, and such license as shall be ordered and fixed by the respective boards of police of the proper county.

Here we have the first intimation that the State intended to tax the license or the person (for it is immaterial which is meant, as the owner of the license has to pay in any event).

By this act the corporate authorities of the towns and cities have it in their power to cut off the State, or the counties of the State, from all revenue arising from the tax on liquor licenses; but in case they issued any, the State asserted its right to tax, as well as the counties of the State.

The Act of the 5th December, 1865, passed by the same legislature, taxes "all sales of ale, beer, spirituous, vinous, or malt liquors, in any quantities over one gallon, five per centum;" thereby clearly indicating that they intended to reach the licensed liquor-vendor by a specific tax upon his business or profits, according to the probable amount of his receipts, and to the population of the place where sold.

The legislature, by these acts last mentioned, intended that counties as well as the State should derive revenue from these licenses — the county by levying a tax upon the license issued by an incorporated town or city, of over two thousand inhabitants; and for the boards of police to issue license to such vendors licensed in incorporated town, of less than two thousand inhabitants.

The legislature, using the language of the Code in the General Liquor Law, p. 197, fixed the tax to be paid on the license in question, if the population of the town of Corinth did not amount to one thousand inhabitants. So far as the State was concerned or interested, the assessor, acting under the law in question (the population of Corinth being under one thousand inhabitants), assessed the license in question one hundred dollars.

The view taken of the act in question as to the retroactive features of it, and for which we should hold the same unconstitutional and void as to plaintiffs in error, as contended by counsel, we cannot sanction; as we have before said, if the license was the subject of taxation, it was made so by the operation of the General Liquor Law.   Sec. 3, p. 197, Revised Code.   The

act did not require construction to fix a liability upon the license of plaintiff in error.

There being nothing in the license exempting it from taxation by the State, we have arrived at the conclusion that the Act of 5th of December, 1865, under consideration, so far as it affects the rights of plaintiffs in error, is not unconstitutional, and does not fall within the prohibitions of the Constitution of the United States, and is not repugnant to the decisions of the Supreme Court of the United States, relied upon by counsel for plaintiffs in error. To hold any other view of this act would be trenching upon the sovereignty of the State in the exercise of its taxing power; we should create a contract where none was intended, or one without mutuality.

Under this view of the act in question, it follows that the plaintiffs in error are liable for the State tax of one hundred dollars assessed on their license, as set forth in the record.

As we have previously remarked, the object of the act in question is, that the counties shall receive revenue in every case when a liquor license is issued, either in an incorporated town of two thousand inhabitants, or a less number; and when the county has received the tax assessed for the license, when the population is under two thousand inhabitants, it seems to us manifest that the legislative intention appearing through all of the acts noticed herein, in this connection, was, that the license, or licensed liquor-vendor under a license, should be only taxed once by the county.

In the case before us, the county of Tishomingo, through its board of police, assessed and taxed the plaintiffs in error in the sum of two hundred dollars for their license; and the funds arising from said tax passed by operation of law into the county treasury.

If we are correct in this view of the law, the county of Tishomingo exhausted its power of taxation upon the license when the board of police granted it to plaintiffs in error.

The law contemplated that the boards of police might lawfully impose a tax upon the State tax fixed by the Act of December 5, 1865, on licenses in cities or incorporated towns of over

two thousand.  In all other incorporated towns of less than two thousand inhabitants, as we have held in the case of *Alexander Licks* v. *The State*, 42 Miss. p. 316, the boards of police have subordinate jurisdiction.  After the issuance of a license to retail spirituous liquors by the corporate authorities of such towns, the board of police can assess a tax on the license, or issue their license to the same individual, requiring him to pay a further tax for the privilege, etc.

It is a very common occurrence that acts of the legislature for the benefit of all the people work most serious injury to the interests of individuals.   With these seeming hardships we have nothing to do.  We can only place such construction upon a statute (where it is susceptible of two constructions) which will do the least injury to the public or individuals.

This we think we have done in the one under consideration. Any other construction would work great injustice to the plaintiffs in error, and would be repugnant to the true intent and meaning of the act.

We do not think the legislature has transcended its power, in the passage of the Act of Dec. 5, 1865, so far as the same applies to the license of the plaintiffs in error.

We can see no such opposition between the law and the prohibitory clause of the Constitution of the United States, forbidding legislatures from passing laws impairing the obligation of contracts, as to warrant us in declaring the act in question void as to plaintiffs in error.

. Many collateral questions have been raised and urged in argument in support of the main question presented in the case, which we consider unnecessary to allude to.  The constitutionality of the Act of Dec. 5th, 1865, was admitted by counsel when the provisions of the same should be applied to cases where licenses were taken out after the passage of the act.

We do not intend to intimate an opinion upon the construction of this statute, as to its bearing upon licenses issued by corporations, under this Act of the 14th of November, 1865.

This is not such a case requiring any construction of the act,

except the one we have given as applicable to the circumstances of the case under consideration.

We are therefore of the opinion that the injunction should be made perpetual against the collection of the additional tax assessed by the assessor of Tishomingo county upon the State tax, and that the injunction should be dissolved so far as it enjoins the one hundred dollars, as assessed against the license of plaintiffs in error.

The demurrer should have been overruled in the cause, for it was good only as to a part of the bill. It is a well-settled rule of chancery practice, that when the demurrer is too general — that is, if it covers or is applied to the whole bill when it is good to a part only — it will be overruled. It cannot be good as to a part which it covers, and bad as to the rest. Story's Equity Pleading, § 443, p. 400; 1 Daniel's Ch. Pleadings and Practice, p. 608; 5 Johns. Ch. Rep. 184.

The demurrer will be overruled, the decree reversed, and the cause remanded for further consideration, in accordance with this opinion.