FORD *v.* EASTERLING, JUSTICE OF THE PEACE, *et al.*

(In Banc. Oct. 24, 1938. Suggestion of Error Overruled Nov. 14, 1938.)

[184 So. 153. No. 33250.]

**Martin & Farr,** of Prentiss, for appellant.

**W. A. Beard, Jr.,** and **F. Holt Montgomery,** both of Laurel, for appellees.

Argued orally by **G. L. Martin,** for appellant.

**Ethridge, J.,** delivered the opinion of the court.

The appellant O. J. Ford, filed a petition for a writ of prohibition against Geo. Easterling, Justice of the Peace of District No. 5 of Jones county, the members of the Board of Supervisors of the county, and C. H. Thompson,

Sheriff, alleging that the Board of Supervisors passed an order or ordinance reciting that certain territory in the unincorporated village of Moselle was "a residential section in which are located several churches, and that it will promote the public health, morals and safety for the hereinafter described territory to be zoned against the sale of beer so as to prohibit the sale of said beer within said territory. It is hereby ordered and there is hereby zoned against the sale of beer and wine and the sale of beer and wine is hereby prohibited at all times in the following described territory lying in the first judicial district of Jones county, Mississippi, to wit: All that territory at Moselle, First District, Jones county, Mississippi, which lies within 1500 feet of any school or church."

The petitioner alleged that he was engaged in the sale of beer in the business district of the town of Moselle, an unincorporated village of 204 inhabitants—larger than some incorporated towns—and which has been in existence for more than forty years; that the town has a main street facing the east or business section, running approximately north and south; that east of Main street and parallel thereto, or approximately so, is the N. O. & N. E. Railroad tracks, with its depot; that farther east of the railroad, and facing west, is a church; that the town of Moselle is not a rural area; that this church is situated on the outskirts of the town; that Main street has been recognized for many years as the business district of said town, being so regarded long before the church, east of the business section, was built; that the said town was laid off in business and residential districts, each separate from the other; that petitioner's place of business is located near the center of Main street, which is the only business street in the town, and about 250 yards by direct line from the nearest church, and about 1200 to 1400 feet from it by the usual and ordinary passway used in going to and from the church. Petitioner states that religious services are held only

once a month, and is in nowise interferred with by his place of business; that there are other places of business nearer the particular church than his; that his place is not in the residential section of the town, there being no residences between the business houses on Main street, and the depot is between his place and the church; and that he has at all times conducted his business in a decent and legal manner, at no time allowing any disturbances or any boisterous conduct; that it in nowise interferred with services or worship at any of the churches or schools of the town, and is not a menace to the morals or health of the community. The petitioner further alleged that should he move his place of business out of the business district of Moselle, he would either have to move into the residential section, or go out of business altogether; that there was no part of the business section of the town which was not within 1500 feet of the church. He alleged that the sale of beer had been recognized in the state, that it is a valid business, that the order of the Board of Supervisors is unreasonable, arbitrary, oppressive and confiscatory, and that its enforcement will result in the destruction of his business and property, and deprive him of his liberty and right to make a living without due process of law, contrary to the provisions of section 14 of the Constitution of Mississippi, and that he has no adequate or ordinary remedy at law, etc.; and prayed for a writ of prohibition to issue.

The ordinance in question was made an exhibit to the petition. The Circuit Judge directed process to issue for a hearing before him as to why the writ of prohibition should not be issued as prayed, and the petition was demurred to by the district attorney and the attorney for the Board of Supervisors on the ground that the writ of prohibition does not apply to the Board of Supervisors, in taking the step alleged in the petition; and that the prayer of the petition attempts to restrain the Board of Supervisors from performing an act which is

without its jurisdiction, and which has not been attempted by the Board. The district attorney's demurrer is on the ground that the writ was returnable in vacation, and not in term time.

On an amended petition filed by the petitioner on leave of the Judge, it was alleged that the church nearest the place of business of the plaintiff was a distance of 846 feet therefrom on a straight line, the nearest traveled way being 966 feet. The amended petition further alleges that the town was properly policed at the time, a deputy sheriff residing in that vicinity, and being about the town every day; while in the district were two justices of the peace; that Moselle is in a law-abiding section, and that plaintiff has conducted his business in a legal and decorous manner, coöperating with the law-enforcement officers.

On the hearing before the Circuit Judge the latter denied the writ of prohibition as to the justice of the peace, and sustained the demurrer as to the Board of Supervisors and Sheriff, granting an appeal with supersedeas to this Court.

The Legislature in 1934 passed an act, chapter 171, Laws of 1934, Regular Session, which was entitled, ''An Act to authorize the transportation, storage, sale, distribution, possession, receipt, and/or manufacture of light wines and beer; to provide the manner in which counties may prohibit such traffic; to regulate the manufacture, distribution, sale, and transportation within the state of Mississippi of light wines and beer; and for other purposes.''

By section 18 of this chapter it is provided that; ''Municipalities may enforce such proper rules and regulations for fixing zones and territories, prescribing hours of opening and of closing, and for such other measures as will promote public health, morals, and safety, as they may by ordinance provide, and the board of supervisors of any county may make such rules

and regulations as to territory outside of municipalities as are herein provided for municipalities."

Section 22 of the act provides that: "(a) It is hereby declared that it is the legislative intent that this act privileges the lawful sale and manufacture, within this state, of light wines and beer as described herein; and that the provisions of this act are severable; and if any word, clause, sentence, section, paragraph, or part of this act shall be held unconstitutional by the valid judgment or decree of any court of competent jurisdiction, the same shall not affect any of the remaining parts, sections, paragraphs, sentences, clauses, or words of this act. (b) Provided, however, that nothing in this act shall prohibit the governing body of any municipality from designating what territory surrounding churches and schools in said municipalities, and the board of supervisors of any county from designating what territory surrounding churches and schools outside of any municipality, in which said wines and beer shall not be sold or consumed."

It is stated by the appellant that the suit does not challenge the constitutionality of the provisions cited, or of the act, but that it is based upon the proposition that the ordinances are unreasonable, and therefore void. In the case of Alexander v. Graves, J. P., 178 Miss. 583, 173 So. 417, the statute involved was construed, and it was there held that the Board of Supervisors had power to pass an ordinance creating a zone wherein beer and light wines should be prohibited. In Blount v. Kerley, 180 Miss. 863, 178 So. 591, we held that the writ of prohibition may be resorted to in a proper case to prevent vexatious prosecutions under a void ordinance, but not for violation of a valid ordinance;—following the decision of this Court in Crittenden v. Town of Booneville, 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518; and Hurley v. City of Corinth, 97 Miss. 396, 52 So. 695. But the writ would not lie to correct irregularities in judicial proceedings.

The question for consideration here, therefore, is whether the ordinance is unreasonable in the sense that it would constitute an arbitrary regulation contrary to due process of law under section 14 of the state Constitution, and the Fourteenth Amendment to the Constitution of the United States, U. S. C. A. Const. Amend. 14.

It is suggested here that the appellant's place of business, where he sold beer, was not in proximity to the church, the distance being given in the statement of facts above; and that it would be unreasonable to prohibit the sale of beer at a point so remote from the church as the distance shown in the petition. In considering the question of reasonableness, we may take into consideration the nature and character of the business sought to be controlled or regulated or prohibited, and the legislative action in reference to such matters heretofore enacted. It seems to be conceded that the Legislature itself could have prohibited the sale within the distance prescribed, the idea seeming to be that it could not delegate that power to the Board of Supervisors, being only able to delegate to the Board powers to be reasonably exercised.

In the act of the Legislature of 1884, at page 200, chapter 182, it was provided that it should be unlawful for any person to make, sell or give away in the city of Corinth, or within five miles of the Alcorn county courthouse, any spirituous, vinous, malt or intoxicating liquors of any kind, or mixtures thereof, except as thereinafter described in the act. The exceptions, giving the right to use wines for sacramental purposes, or in dispensing hospitality, or for persons to manufacture wine from grapes or berries; also for its use by a licensed practicing physician in treatment of patients.

By chapter 183, Laws of 1884, it was provided that it should be unlawful for any person or persons to make, sell, barter, give away, or in any manner dispose of vinous, spirituous or malt liquors or bitters that intoxicate, within five miles of the Masonic hall in the town of Kos-

suth in Alcorn county, etc., making exceptions of wines made from domestic grapes, and the right of physicians to use liquors for medicinal purposes.

On page 202 of the Laws of 1884, in chapter 184, it is provided that it shall be unlawful for any person to sell, give away or dispose of, in any way, vinous, spirituous or malt liquors within that portion of the second supervisors' district of Alcorn county, "north of a line running east and west, one mile south of, and parallel to the Memphis & Charleston Railroad, in said district," excepting certain uses as already set out.

On page 203, chapter 185 of this act provides that it should be unlawful for any person to sell, give away or dispose of in any way, any intoxicating liquor in the town of Sarepta, Calhoun county, Mississippi, and within three miles thereof, but excepts physicians from such provisions, when prescribing for patients.

By chapter 186, on page 204, Laws of 1884, the sale of such liquors was prohibited within the corporate limits of Black Hawk in Carroll county, or within five miles thereof, amending the act of March 22, 1871; and also chapter 187, Laws of 1884, likewise prohibiting such sales in Clarke county. By the next chapter (188) the Legislature prohibits the sale and disposition or giving away of intoxicating liquors in Copiah county, and the next chapter (189), on page 207, makes it unlawful for any person to sell or give away intoxicating liquors in the town of Houston in Chickasaw county, or within three miles thereof, making an exception of physicians.

Likewise, in 1882 the Legislature, in chapter 508, provided that the giving away or selling of any intoxicating liquors, and especially any of the preparations known as bitters, by whatever name, or in any quantity, within three and a half miles of Oak Grove in Chickasaw county, is unlawful. And by chapter 510, laws of 1882, it was provided that it should be unlawful for any person to sell, barter, give away, etc., for any purpose whatever, any intoxicating liquors, whether vinous,

spirituous or malt, any bitters, or Jamaica Ginger if intoxicating, in any quantity within supervisor's district No. 1 of Calhoun county, or in the town of Benela in said county, or within five miles of said town; or in the town of Oakland in Yalobusha county, or within three and a half miles thereof, etc.

These acts show that the Legislature, in dealing with intoxicating liquors, do not consider it unreasonable to prohibit the sale, or disposition in any way, of intoxicating liquor within five miles of a given point. So far as reasonableness is concerned, we can see no difference in its being dealt with by the Legislature, and in their authorizing the Board of Supervisors to do so. If it is reasonable in one case it would appear to be reasonable in the other.

In Rohrbacher v. Mayor, etc., of City of Jackson, 51 Miss. 735, the power of the Legislature to delegate to local authorities the power to prohibit the sale of intoxicating liquors, was upheld. In the opinion by Judge SIMRALL, on pages 743, 744, the Court said: "The state may deal with the subject by absolute prohibition, or by regulations. Bartemeyer v. Iowa, 18 Wall. (U. S.) 129, 21 L. Ed. 929; License Cases, 5 How. (U. S.) (S. C.) 504, 12 L. Ed. 256; Cooley Const. Lim. 581-2-3. The police power extends to wholesome restrictions on property and individuals, in order to secure the general health, comfort and prosperity of the state. The power of the legislature cannot be questioned. Thorpe v. R. & B. R. R. Co., 27 Vt. 140, 62 Am. Dec. 625; Commonwealth v. Alger, 7 Cush., Mass. [53], 84. If the state may require the recommendation of five or six freeholders, it may enlarge the number to ten or fifty. In a word, it may, in its discretion, lay down the terms upon which the license may issue. During all the years that these several statutes have been in force, with the many indictments and litigations that have grown out of them, we have been referred to no case that throws doubt or suspicion on their validity. In House v. State, 41 Miss. 737, so far from casting sus-

picion on art. IV, pp. 197-8 of the Code of 1857, which is the original of section 2459 of the present code, it was expressly held that the grant of license 'without the petition of a majority of the legal voters resident within the city, is null and void.' The court says (pages 742, 743) that the instruction of the circuit court, which embodied that idea, announced a correct principle of law. It will be observed that the statute of 1857 applied more stringent terms to the applicant for license than the former laws, nor was it debated at the bar, or alluded to by the court that it was not as completely in the competency of the legislature to require the petitioner for license to be supported by a majority of voters, as by the few householders, or freeholders under the prior laws. . . . Whether the recommendation and consent of any person resident in the district or town or city shall be obtained or not, or whether the whole matter shall be referred to the judgment of the board of supervisors, or town or city authorities, is purely a matter for the wisdom of the legislature.''

In the case of Reed & Co. v. Beall, 42 Miss. 472, it was held that licenses granted by boards of police to retail in an incorporated town of less than one thousand inhabitants constitutes no contract between the state and the individual licensed, although such license issues under authority of state laws. They are merely franchises, creatures of the law, and objects of the taxing power.

In the case of Moore v. State, 48 Miss. 147, 12 Am. Rep. 367, it was held that as to the supervision and control of internal police, the legislative power of the state is unaffected by that charge of the Constitution of the United States which forbids the states to pass any law impairing the obligations of contracts. While the states may not repeal or materially alter charters to promote charities, eleemosynary institutions established by private means, and the like, their power is unrestrained over internal police, sanitary and moral, citing authorities; and the state cannot abnegate or surrender the

duty which is perpetually upon it to consult the physical and moral good of the people. It further held that the state, whether making organic law or passing ordinary legislative acts, cannot infringe upon the inviolability of contracts; but that franchises or licenses which assume to allow that to be done in the state for a long term of years which experience proves to be injurious to morals and a snare to the ignorant—such, for example, as a lottery company—is not a contract within the prohibition. It also held in that case that the authority to raise money by lotteries, or to sell spirituous liquors, is not protected by the prohibition of the Constitution of the United States against the impairing of contracts, it not being the intention of that prohibition to restrain the police power of the states in the preservation of the public morals.

In Ex Parte Fritz, 86 Miss. 210, 38 So. 722, 109 Am. St. Rep. 700, it was held that it is competent for the Board of Supervisors, although a judicial body in some respects, to exercise legislative powers, and that such practice had been continued during the history of the state.

In Schulherr v. Bordeaux, Sheriff, 64 Miss. 59, 8 So. 201, it was held that section 39 of article 4 of the state Constitution, which provides that "the legislature shall provide by law for determining contested elections," was addressed solely to the Legislature and mandatory upon it, and an act of the Legislature authorizing an election will not be annulled by this court because of the failure of the Legislature to make provision for contesting such election; that the operation of an act may be made to depend upon a future contingency, without being unconstitutional; that the provision in an act of the Legislature that the sale of vinous and spirituous liquors shall be permitted or prohibited within any county, as the voters of such county may decide at an election to be held for that purpose, is not such a delegation of legis-

lative power to the voters as to render the act unconstitutional.

It is therefore clearly established that the legislature may make the sale of liquors, intoxicating in their nature, dependent upon the will of a particular locality; and the determination of the will of that locality may either be confided to the people themselves, or to officers elected by them, in whose judgment the legislature reposes confidence. Boards of Supervisors are generally selected as being men of character and judgment; and it would not be unreasonable to vest in such board the exercise of judgment and discretion in regard to the subject here involved. In dealing with such matters as intoxicating liquors, lotteries, gambling houses, and other things affecting the public morals, health or safety, the Legislature has a wide discretion in framing laws to deal therewith.

In Purity, etc., Co. v. Lynch, 100 Miss. 650, 56 So. 316, it was held by this Court that a beverage which contains no alcohol, and is not intoxicating, but contains 5.73 per cent of malt, is a malt liquor within the acts of 1908, chapter 115, section 1, prohibiting the sale within the state of any vinous, alcoholic, malt, intoxicating or spirituous liquors; that such act was not unconstitutional, as being beyond the police power of the state; that while the police power of the state has its limitations, such limitations have not been reached when the state law is only made broad enough to make its prohibitory laws effective, and include in its provisions frauds, disguises, subterfuges, attempted evasions, or beverages easily used as subterfuges for intoxicating liquors. In the course of the opinion, Judge MAYES, Chief Justice, speaking for the Court, said: "The case is before the court on an agreed state of facts. The agreed facts state that Poinsetta contains no alcohol, preservatives, or saccharine. It is agreed that Poinsetta is sold as a beverage, and is composed of 90.45 per cent. of pure distilled water, and 9.55 per cent. of solids, all of the solids be-

ing derived from cereals in an unfermented state, and being wholesome and nutritious. But it also appears that it does contain 5.73 per cent. of malt. The formula for making the beverage is not given, but it is agreed that in the manufacture of same the cereals used are not treated in the same way as those used in the preparation of any malt beverage containing alcohol which will intoxicate, but the treatment of the grain is by extracting the valuable food properties and combining them with water, so that the grain is not fermented or steeped in such a way as to produce saccharine matter or alcohol; that the beverage contains none of the properties of alcoholic drinks or malt drinks that would intoxicate. The primary processes employed in the production of Poinsetta have some of the elements in common with some of those employed in preparing grain for malting porter, ale, or beer, etc.; but the process thereafter used in the preparation of this beverage is radically different from that used to produce ale, beer, etc. But Poinsetta is made from malt. It is agreed that its taste is distinct and different from any intoxicating malt or other liquor. It is agreed that it has not the appearance or odor of intoxicating liquor, and cannot be employed as a subterfuge." The Court held that the sale of malt liquor was prohibited, whether or not intoxicating in fact, citing Fuller v. City of Jackson, 97 Miss. 237, 253, 52 So. 873, 876, 30 L. R. A. (N. S.) 1078; Reyfelt v. State, 73 Miss. 415, 18 So. 925, and Edwards v. City of Gulfport, 95 Miss. 148, 49 So. 620, where it was held that "such liquors could not be lawfully sold, though in fact they were not intoxicants. Poinsetta may or may not be an intoxicant; but it is a malt liquor, and as such is prohibited from being sold in this state. The prohibition law cannot be made effective unless it excludes all subterfuges."

In State v. Phillip, 109 Miss. 22, 67 So. 51, the validity of chapter 127, Laws of 1914, section 4 thereof, prohibiting the carrying of intoxicating liquors into social clubs,

is upheld; the Court there being of the opinion that it does not unduly limit the use of property, contrary to the Constitution of 1890, section 14, and the Fourteenth Amendment to the Constitution of the United States, section 1, U. S. C. A. Const. Amend. 14, section 1, guaranteeing due process of law, but is a proper exercise of the "police power" which extends to whatever is held by the prevailing morality or strong public opinion to be necessary to the public welfare; nor did such act deprive the members of the social clubs of the equal protection of the law, since the act is beneficial, rather than detrimental, to social clubs.

In discussing the act and its relation to prohibition of the sale of intoxicating liquors, Judge SAM C. COOK reviewed the authorities on the subject, especially with reference to the policy of the state in prohibiting such sale; in the course of his opinion he said (referring to Eidge v. City of Bessemer, 164 Ala. 599, 51 So. 246, 26 L. R. A. (N. S.) 394): "It seems clear to us that the court entirely underestimated the ability and cunning of the average illicit dealer in intoxicating beverages. The city counsel was much wiser, in our opinion, to the devious ways of this class of criminals. Given a 'pop stand' or a soda fountain the blind tiger is practically immune from prosecution under any laws against the sale of intoxicating liquors. It would seem clear to us that violators of the law would have filed a dissenting opinion in that case, and could have pointed out with precision wherein the court erred, when it said that this ordinance sustains no reasonable relation to the prohibition law. The dissenting opinion by Judge McCLELLAN, points out the reasonable relation of the ordinance to the prohibition law in a much clearer way than we can hope to do, and we refer to his opinion and adopt the same as our own."

In passing on the law here involved, chapter 171, Laws of 1934, in relation to the policy of the state in regard

to the sale of beer and light wines, the Legislature recognized that there were communities where such sale or disposition of such liquors would or might be harmful to the peace, order and morals of the community, as well as the safety of persons in and around such places.

In the first place, it gave to the people of the entire county the right to vote the sale of liquor out of the county under conditions therein set down, regardless of the wish or attitude of the Board of Supervisors. It is recognized that in some counties the sale of intoxicating liquors would be unsatisfactory, and would interfere with the lives and habits, the morals and safety of the people in such communities. But it does not stop there, —it confers upon the authorities of the municipalities, and the Boards of Supervisors outside of municipal corporations in counties, the right to deal with the subject so as to preserve or promote public health, morals and safety, leaving to the judgment of the Board of Supervisors, without prescribing any conditions precedent to the exercise of that power, the decision in regard to the establishment of zones in rural areas in which the sale of liquor shall be prohibited for the good of the community.

In clause (b) of section 22 of the act, it gave the power to municipalities, and to Boards of Supervisors as to rural districts, to designate in what territory surrounding churches and schools in municipalities or in the counties, as the case may be, wines and beer shall not be sold or consumed. We find in the case before us an unincorporated village or town of 204 inhabitants, with churches and schools in the community; and the Board, for reasons satisfactory to themselves, determined, in the exercise of legislative power conferred upon them, to zone territories in the community around churches and schools. In considering the reasonableness of such an ordinance, the fact that such liquors, if drunk to excess, will intoxicate, and that intoxicated persons frequently become a menace to the safety of the public, must be

noted. Intoxication itself is an evil, long recognized by reasonable people as tending to undermine moral responsibility, and to promote immorality generally.

The distance prescribed by the zoning ordinance in this instance was one thousand five hundred feet. It is well known that the voices of intoxicated persons are frequently heard at greater distances than here indicated; and that intoxicated persons frequently become reckless and irresponsible, boisterous and violent. They could easily go to the church or school nearby while in that condition, and seriously disturb services in the church, or the operation of the school. It is well known that many persons, reasonable men and women, regard churches, even the buildings used for worship, as being entitled to greater peace and reverence than are ordinary buildings. Many people seek opportunity for prayer and reflection in churches at other times than for religious services, going there for quiet in which to secure the consolations of religion. The preservation of the tranquillity of such places becomes a matter of public interest, and is entitled to the protection of law when, in the judgment of the Legislature, it becomes necessary to protect the right of citizens to seek sanctuary in the church for purposes of reflection, prayer and study. It cannot be said that the law and the ordinance here involved have no reasonable relation to the peace, morals and safety of the public. As said in Alexander v. Graves, supra, under modern conditions people travel from place to place in highpowered automobiles, frequently at high speed, upon the highway, and intoxication, even to a slight degree, disturbs the judgment and vision of the drivers of such automobiles, rendering them highly dangerous; people, especially those who seek the bubble of joy and the cup of folly, go long distances to drink stands where intoxicating or stimulating liquors may be had, frequently indulging to excess. The question is not limited to whether the seller of such liquors preserves order on his own premises, and conducts his

business so as to avoid violation of the law. The location of the business is inviting to those in search of intoxicating liquors. It must be assumed that reasonable men can reasonably conclude that villages and towns, unincorporated and without police protection, should not be subjected to the hazard of being annoyed and endangered by the sale of such liquors.

We are therefore of the opinion that the Circuit Judge was correct in refusing to grant the writ of prohibition against the Justice of the Peace; and was eminently correct in sustaining the demurrer as to the Sheriff and Board of Supervisors. The judgment is therefore affirmed.

Affirmed.

DISSENTING OPINION.

**McGehee, J.**, delivered a dissenting opinion.

I agree with the view expressed in the controlling opinion as to what has been the policy of the legislature on the general question involved, and I endorse what is said about the evils of intemperance. But, I am unable to concur in the conclusion reached as to the reasonableness of the zoning order in question. Under the facts alleged in the petition, which were admitted by the demurrer, it seems to me that there is no reasonable relation between the location of the church building and the place where the business of the appellant is operated such as would justify the exercise of the power conferred by the statute. If such a zoning order can be validly passed, then it lies within the power of municipal authorities and boards of supervisors to zone area after area of a county against the sale of beverages until the will of the people, as expressed in an election, has been defeated. The statute contemplates that when the sale of the beverages in question is to be excluded from a county it must be done by a majority vote of the people (which the proposition failed to receive in this instance) in an election held for that purpose, and not in the manner here undertaken. The result of the election should

not be nullified, either in whole or in part, by zoning orders, unless there is some reasonable basis for such action, as where there exists a real relation between the conducting of the business at the place referred to and the location of the church building at the distance here shown.

**Griffith, J.**, delivered a dissenting opinion.

In my judgment, the laws respecting intoxicating liquors or beverages should be interpreted and administered under the same established rules which appertain to similar legal issues under the laws dealing with other subjects. So far as I know, it may be a fact that every judge of this Court would be glad to see the day when, as an actuality, not a drop of such liquors or beverages could or would be sold or consumed in this State for any purpose or on any occasion whatsoever. But this is no more reason for overstraining the established principles of the law to further what may be thought to be in the interest of prohibition, than to do the reverse if we entertained the opposite views on the general question. It has been the constant argument or reproach by those who oppose the sale or use of any kind of intoxicating liquors or beverages that if those on the opposite side be given an inch under the law they will take an ell. It is important, therefore, that those who are on the side which has thus cast this reproach should not themselves be subject to that same observation,—taking an ell when given an inch.

It is an established principle of the law, secured by constitutional requirements, that when inferior boards, such as aldermen or supervisors, are authorized to enact orders or ordinances, legislative in character, such as here involved, the orders or ordinances must conform to substantial reason,—there must be a substantially reasonable relation between the objects to be accomplished and the facts which form the basis for the action taken.

Here, there is within the ordered zone only one church, and therein, according to the record, services are held only once a month; nevertheless it is declared that this is a sufficient factual basis for the prohibition for all the remaining twenty-nine days. The mere statement speaks for itself,—an inch is allowed by the law and an ell has been taken by those in authority under it.

**Anderson, J.,** delivered dissenting opinion.

The reasonableness of the ordinance is for the Courts to determine. In my opinion, the one involved is manifestly unreasonable and therefore void. The Board could have just as reasonably zoned the whole County into a prohibition territory, and thereby held for naught the statute permitting the sale of beer in the County.