[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The dispositive issue in this zoning appeal is whether the Board of Education of the City of New Haven (board) has standing to appeal the action of the Zoning Board of Appeals of the City of New Haven (ZBA) granting a variance of the regulation prohibiting the sale of liquor within 500 feet of a school. The court finds that the mandate in General Statutes § 10-220
that the board provide a "safe school setting," in the context of the potential danger which Connecticut case law holds is inherent in liquor traffic, confers standing on the board.
The defendant, Leon Gutierrez, is the owner of real property CT Page 1946 located within a 500 foot radius of Troup Magnet Academy of Science (Troup), a public secondary school in the City of New Haven. The plaintiffs are the board, Dr. Reginald Mayo (Mayo), Superintendent of the New Haven public schools, and Richard Kaliszewski (Kaliszewski), principal of Troup. The plaintiffs' complaint alleges that Troup is under the operation and contro1 of the plaintiff board.
Section 42.1.C of the New Haven Zoning Ordinance provides in relevant part: "No package permit shall be permitted to locate, relocate or remove to any location where the outside entrance of such location is within 500 feet from the property line of any public or private elementary or secondary school." The defendant, José Fernandez (Fernandez), applied to the ZBA for a variance of § 42.1.C to permit a package permit within 420 feet of the Troup school. The ZBA granted the variance, and the board, Mayo and Kaliszewski appealed to this court. Fernandez contends that the plaintiffs lack standing and moves to dismiss the appeal.
General Statutes § 8-8 (a) provides in relevant part that "any person aggrieved by any decision of a [zoning] board may take an appeal to the superior court. . . ." "The question of aggrievement is essentially one of standing." (Internal quotation marks omitted.) R R Pool Home, Inc. v. Zoning Board ofAppeals, 43 Conn. App. 563, 568, 684 A.2d 1207 (1996). "The terms standing and aggrievement are often used interchangeably in Connecticut zoning law." Id., 568 n. 8. Although General Statutes § 8-8 provides automatic, statutory aggrievement for persons "owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board," there is no evidence that any plaintiff owns such land, nor do the plaintiffs claim statutory aggrievement. "Therefore, for the plaintiffs to have standing to bring an appeal, they must meet the test of classic aggrievement. . . ." Northeast Parkingv. Planning Zoning Commission, 47 Conn. App. 284, 287,703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998).
"[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and CT Page 1947 injuriously affected by the decision. . . ." New England CableTelevision Assn., Inc. v. Dept. of Public Utility Control,247 Conn. 95, 103, 717 A.2d 1276 (1998).
 I
The court first addresses whether any of the plaintiffs have "a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole." Id.
A government official or governmental agency may have "a specific, personal and legal interest in the subject matter of the decision" of another agency or judicial body where the agency or official is charged by statute with an authority or responsibility, other than as an arbiter between parties; Local1303 v. Freedom of Information Commission, 191 Conn. 173, 176-77,463 A.2d 613 (1983); which authority or responsibility is implicated by the latter's decision.
For example, in Zoning Board of Appeals v. Planning ZoningCommission, 27 Conn. App. 297, 605 A.2d 885 (1992), the plaintiff board was held to have a specific, personal and legal interest in the subject matter of the defendant commission's decision abrogating the board's authority to grant use variances. The plaintiff had such an interest because General Statutes § 8-6
conferred on the board the authority to grant use variances, which authority was subject to the proviso that the commission in its zoning regulations may "specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed." (Emphasis added.) Id., 302-03. In Kelly v. Freedom of Information Commission, 221 Conn. 300,312, 603 A.2d 1131 (1992), the chief state's attorney's statutory responsibility for the investigation and prosecution of criminal cases throughout the state was held to confer on him a direct interest in an order of the defendant commission to a local chief of police to disclose arrest records during the pendency of criminal proceedings. See also Milford v. Local 1566,200 Conn. 91, 97, 510 A.2d 177 (1986) ("[G]overnmental agencies . . . have standing . . . where the lower court's ruling impaired the agency's ability to discharge effectively the obligations imposed on it by law.").
Here, General Statutes § 10-157 (a) provides in pertinent part: "Any local or regional board of education shall provide for CT Page 1948 the supervision of the schools under its control by a superintendent who shall serve as the chief executive of the board. The superintendent shall have executive authority over the school system and the responsibility for its supervision."
General Statutes § 10-220, entitled "Duties of boards of education," provides in pertinent part: "Each local or regional board of education shall maintain good public elementary and secondary schools . . . [and] shall provide an appropriatelearning environment for its students which includes (1) adequate instructional books, supplies, materials, equipment, staffing, facilities and technology, (2) equitable allocation of resources among its schools, and (3) a safe school setting. . . ." (Emphasis added.) "In the absence of a statutorily provided definition . . . words and phrases shall be construed according to the commonly approved usage of the language." State Board ofLabor Relations v. Freedom of Information Commission,244 Conn. 487, 497, 709 A.2d 1129 (1998) "Environment" is defined as, "[t]he circumstances or conditions that surround one . . . [t]he complex of social and cultural conditions affecting the nature of an individual or community." The American Heritage Dictionary (2d. Ed. 1985). "Setting" is defined as, "[t]he context and environment in which a situation is set." Id. Thus, the common usage of the terms contained in "appropriate learning environment" as well as "safe school setting" indicate that General Statutes § 10-220 imposes a duty on the board to maintain a "context and environment" that is suitable for learning and free from danger or risk.
The issue at this juncture devolves into the question as to whether circumstances or conditions beyond the school premises proper may impair the "appropriate learning environment" and "safe school setting" inside the school which it is the duty of the board to provide. Preliminarily, two observations are in order. First, "the test for determining aggrievement is broader than injury to real property and . . . the `interest' which may be the subject of aggrievement need not be confined to an interest in real property." Mystic Marinelife Aquarium, Inc. v. Gill,175 Conn. 483, 493, 400 A.2d 726 (1978); see Glendenning v.Conservation Commission, 12 Conn. App. 47, 54, 529 A.2d 727, cert. dismissed, 205 Conn. 802, 531 A.2d 936 (1987) (same); 9A Connecticut Practice Series, R. Fuller, Land Use Law and Practice, 2d Ed. (West 1999) § 32.5. Second, although mere proximity to the real property that is the subject of zoning action has never been sufficient, without more, to establish CT Page 1949 classical aggrievement; Foran v. Zoning Board of Appeals,158 Conn. 331, 334, 260 A.2d 609 (1969); it is often a principle factor in such a finding. See, e.g., Allin v. Zoning Commission,150 Conn. 129, 130, 186 A.2d 802 (1962).
"Plainly schools and churches have a valid interest in being insulated from certain kinds of commercial establishments, including those dispensing liquor. Zoning laws have long been employed to this end, and there can be little doubt about the power of a state to regulate the environment in the vicinity ofschools . . . by exercise of reasonable zoning laws." (Emphasis added.) Larkin v. Grendel's Den, 459 U.S. 116, 121,103 S.Ct. 505, 74 L.Ed.2d 297 (1982); see, e.g., Grayned v. City ofRockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1974) (government's legitimate interest in protecting the environment around a school sustained an anti-noise ordinance prohibiting wilfully making on grounds adjacent to a school, noises which were disturbing to the good order of the school session).
The General Assembly has often recognized the danger of conducting certain activities near a school. General Statutes21a-278a (b), for example, criminalizes the "manufacturing, distributing, selling, prescribing, dispensing, . . . offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . ." "The purpose of § 21a-278a (b) is present on its face and its legislative history. This statute was designed to protect children and schools from the danger that accompanies illegal drugs and their purveyors." (Emphasis added.)State v. Patrick, 42 Conn. App. 640, 649, 681 A.2d 380 (1996); see also General Statutes § 21a-279.[1] Such statutes have been enacted around the country and have been generally upheld-against an array of challenges. See annot., 108 A.L.R. Fed 784 (1992), "Validity and construction of 21 U.S.C. § 860
enhancing penalty for drag distribution if offense occurs within 1000 feet of school, college, or university"; annot., 27 A.L.R.5th 593 (1995), "Validity, construction, and application of state statutes prohibiting sale or possession of controlled substances within specified distance of schools."
General Statutes §§ 10-233c and 10-233d provide that a board of education may suspend or expel a pupil whose conduct off school grounds is violative of a publicized policy of the board and is "seriously disruptive of the educational process. . . ." CT Page 1950 One of the four enumerated non-exclusive criteria which a board of education may consider in determining whether conduct is seriously disruptive of the educational process is whether the incident giving rise to the disciplinary action "occurred within close proximity of a school. . . ."[2] General Statutes §10-233c (a).
Scholarly research and governmental studies have established that conditions beyond the immediate school premises may impair an "appropriate learning environment" and "safe school setting." The Bureau of Justice Statistics and the National Center for Education Statistics have conducted collaborative studies analyzing students' experiences and crime present at school locations. A section of the report, entitled "Students' perceptions of personal safety at school and when traveling to and from school," states: "One consequence of school violence is the fear that it can instill in students. Students who fear for their own safety may not be able or ready to learn. Concerns about vulnerability to attacks by others at school and on the wayto and from school may also have a detrimental effect on theschool environment and learning." (Emphasis added). The study also notes that "[w]ithout a safe learning environment, teachers cannot teach and students cannot learn." National Center for Education Statistics, School Crime: 1989 and 1995 (March, 1998) (NCES 98-24).
The court finds that circumstances or conditions beyond the school premises proper may impair the "appropriate learning environment" and "safe school setting" within the school which it is the statutory duty of the board of education to provide. Therefore, the board has a specific personal and legal interest in the subject matter of the ZBA's decision.
 II
The second tier of the test for determining classical aggrievement requires that the board successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision of the ZBA. New EnglandCable Television Assn., Inc. v. Dept. of Public Utility Control, supra, 247 Conn. 95. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted.) Id., 103.
CT Page 1951 For over 100 years, from Beard's Appeal from CountyCommissioners, 64 Conn. 526, 534, 30 A. 255 (1894), to Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184, 676 A.2d 831
(1996), the Connecticut Supreme Court has recognized that "in liquor traffic there is a possible source of danger to the public which is not inherent in other businesses and that therefore such traffic warrants distinctive and particular treatment." (Internal quotation marks omitted.) Id., 198. "We remain convinced that the sale and use of alcohol, and its concomitant abuse and significant role in criminal activity, result in an increased risk to the general well-being of the community. . . ." Id., 199.
In addition to an increased risk to the general well-being of the community, zoning regulations such as the one that the ZBA varied in this case, have been recognized as appropriate to protect schools as well as school children from the criminal activity which often accompanies the sale and use of intoxicating liquors. See annot., 119 A.L.R. 643 (1939), "Reasonableness of Statutory or local regulations prohibiting sale or license for sale of intoxicating liquors within prescribed distance from church, school or other institution." Not only may the undesirable activity generated by traffic in liquor encountered by students on the way to school have a detrimental effect on the school environment and learning, but the intoxicated persons may themselves invade the school for nefarious purposes. As the Mississippi Supreme Court noted in Ford v. Easterling, 183 Miss. 575,184 So. 153, 158 (1938): "It is well known that the voices of intoxicated persons are frequently heard at greater distances than [one thousand five hundred feet]; and that intoxicated persons frequently become reckless and irresponsible, boisterous and violent. They could easily go to the church or school nearby while in that condition, and seriously disturb services in the church, or the operation of the school." The validity of this observation was upheld in a much later case, Davidson v. City ofClinton, Mississippi, 826 F.2d 1430 (5th Cir. 1987) where the court referenced Ford v. Easterling, supra, 183 Miss. 575, to uphold the constitutionality of an ordinance prohibiting liquor from being sold within a certain distance from a school or church.
These observations become tangible in light of the legislative findings that accompanied the enactment of the zoning regulation in this case. The Board of Alderman found the following:
 "WHEREAS: Concerns have been raised about liquor stores CT Page 1952 selling liquor to minors; and
 "WHEREAS: Concerns have also been raised about the proximity of liquor stores to elementary and secondary schools in New Haven because of the negative externalities associated with the loitering in front of the stores; and
 "WHEREAS: [In] at least one New Haven school, school children have been persistently harassed by persons loitering outside a liquor store near the school. . . ."
These expressions, though perhaps not framed as artfully as they would be by a state legislature, constitute legislative findings. "[C]ourts ordinarily follow the legislative finding as to the dangerous nature of the property. . . ." Young v. Lemieux,79 Conn. 434, 447, 65 A. 436 (1907) (Hamersley, J., dissenting), affirmed, 211 U.S. 489, 29 S.Ct. 174, 53 L.Ed. 295 (1909); seeLyman v. Adorno, 133 Conn. 511, 517, 52 A.2d 702 (1947) (legislative findings persuasive though not controlling on courts). As the legislative finding of the Board of Alderman reflects, the direct danger to a school child increases when the child must walk (as opposed to being transported) through the environment on his or her way to school. Notably, the New Haven Public Schools' policy provides that, absent special circumstances, transportation will be provided only for students in grades five through eight who live more than one and one-half miles walking distance, thereby requiring a number of Troup students to walk to school and, potentially, to walk by the establishment at issue.[3]
The court acknowledges the concern expressed by the defendant Fernandez that conferring standing on the board as a consequence of its statutory duty to provide an appropriate learning environment and safe school setting may impel the board to intervene in a host of land use disputes and other regulatory matters which are properly none of its business. The question of aggrievement, however, is a factual one, determined by the court as the trier of fact. Blau v. State Board of Education,19 Conn. App. 428, 431, 562 A.2d 586, cert. denied, 212 Conn. 816,565 A.2d 534 (1989); see Hughes v. Town Planning Zoning Commission,156 Conn. 505, 508, 242 A.2d 705 (1968). Courts are equipped to dispose of claims of aggrievement that are remote or fanciful. CT Page 1953
The court finds that the plaintiff board is aggrieved by the decision of the ZBA varying the regulation proscribing the sale of intoxicating liquor within 500 feet of a school. Because Mayo, as superintendent, is the executive officer of the board; General Statutes § 10-157; with supervisory responsibility of the school system and the duty to protect pupils in the board's custody from dangers reasonably to be anticipated; Burns v. Boardof Education, 228 Conn. 640, 648-49, 638 A.2d 1 (1994); he, too, is aggrieved by the decision of the ZBA. It is, therefore, unnecessary to determine whether the other plaintiffs are aggrieved. See Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,529 n. 3, 600 A.2d 757 (1991); Connecticut Concerned Citizens ofSterling, Inc. v. Connecticut Sitting Council, 215 Conn. 474, 479
n. 3, 576 A.2d 510 (1990). The motion to dismiss is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court