[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on the timely November 30, 2000 application of the plaintiff, Connecticut Independent Labor Union, (hereinafter the "union"), to vacate the November 1, 2000 arbitration award of the Connecticut State Board of Mediation and Arbitration (hereinafter the "arbitration panel") in the matter of Town of Fairfield v. Connecticut Independent Labor Union, Local 67 in favor of the defendant, Town of Fairfield, (hereinafter the "town") Connecticut General Statutes § 52-418 (a)(4). The union asserts that the decision of the arbitration panel does not take its essence from the collective bargaining agreement by and between the town and Local 951 of Council 4 AFSCME, AFL-CIO executed on the August 5, 1998 and covering the period of July 1, 1999, through July 30, 2001 (hereinafter the "collective bargaining agreement"), and therefore the arbitration panel exceeded its powers or imperfectly executed them so that a mutual, final, definite award upon the subject matter was not given.
The stipulated issue before the arbitration panel was whether the town violated Sections 6.01 and 20.01 of the collective bargaining agreement by not posting the position of Maintenance Repairman IV before promotion an employee into that position from a the position of Maintenance Repairman III. (Arbitration Award). The arbitration panel ruled that" This is not considered a vacancy that has to be posted. This is an incentive to reward an exceptional employee with a higher pay grade." Id.
Both parties agree that the scope of the court's review is to determine whether the award draws its essence from the collective bargaining agreement.
The arbitration panel considered the collective bargaining agreement and testimony of the past practices of the parties. In particular, the panel considered Article 20, Section 20.01 of the collective bargaining CT Page 11140 agreement which states:
 The pay structure applicable to job classifications and job descriptions covered by this agreement as established by the Frank C. Brown Company and as subsequently modified by the town is accepted as part of this agreement. New or revised positions will be evaluated or reevaluated in its entirety using all job factors. The town will notify the union of all such new or revised positions and make available the job factors used in its determination. The town recognizes the right of the union to make requests for studies of job classifications when factors in the job content changes sufficiently to warrant such request. The town will classify or reclassify a position or any new equipment if said equipment is substantially changed in function from previous equipment.
The classification Maintenance Repairman IV is a position included in the collective bargaining agreement. (Appendix F of the collective bargaining agreement). Therefore, it is clear that the promotion does not require the creation of a new or the revision of an existing classification. The collective bargaining agreement does not specify how many positions exist within each classification and the union has presented no evidence establishing that there were a limited number of positions within any classification. Therefore, the union has not established that the promotion requires the creation of a new position within an existing classification. There being no evidence that the promotion required the creation of a new or revision of an existing classification or position, the promotion did not trigger the evaluation or notification required in such instances by Section 20.01 of the collective bargaining agreement.
The panel also considered Article 6, Section 6.01 of the collective bargaining agreement which states:
 Vacancies shall be posted on the bulletin board for a period of three (3) working days unless the present opening has occurred within thirty (30) working days of a previous posting for the same job classification. Employees who request the job during this period will be considered on the basis of their skills, ability and qualifications.
The term vacancy is not defined in the collective bargaining agreement and therefore that section is ambiguous as it pertains to what constitutes a vacancy. CT Page 11141
As stated earlier, the arbitration panel also considered the testimony of witnesses who described the past practices of the parties. (Response Brief to Plaintiff's Memorandum in Support of Application to Vacate Arbitration Award, dated July 9 2001). Section 16.01 of the collective bargaining agreement states:
 Nothing in this [collective bargaining] [a]greement shall be construed as abridging any right, be benefit, or privilege that employees of the town enjoyed heretofore unless such practice has been superceded by a provision of this [collective bargaining [a]greement.
Even in the absence of Section 16.01 it is appropriate for a finder of fact to consider extrinsic evidence of the parties intent in order to clarify the ambiguity of a contract.
 When the intent of the parties to a contract is unclear on its face, the trier must determine the intention of the parties through extrinsic sources. The Restatement (Second) of Contracts, § 212, comment (b), explained this concept as follows: It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context. Accordingly, the rule [making extrinsic evidence of intent admissible] is not limited to cases where it is determined that the language used is ambiguous. Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. . . . But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of Intention. [Internal quotation marks omitted].
Levine v. Massey, 232 Conn. 272, 288, 654 A.2d 737 (1995).
Courts give great deference to the awards of arbitrators. OG/O'ConnellJoint Venture v. Chase Venture Ltd. Partnership No. 3, 203 Conn. 133,145, 523 A.3d 1271, [523 A.2d 1271], (1987), American Fabrics Co.v. United Textile Workers of America, 12 Conn. App. 642, 646, CT Page 11142533 A.2d 579 (1987).
The parties concede that the court has a limited standard or review. "This limited standard of review dictates that, with regard to questions of fact, it is not the function of the trial court to retry a case or to substitute its judgment for that of the [arbitration panel. GeneralMotors Corporation v. Dohmann, 247 Conn. 274, 282, 722 A.2d 1205 (1998), citing New England Cable Television Assn., Inc. v. Dept. of PublicUtility Control, 247 Conn. 95, 117-18, 717 A.2d 1276. See alsoConnecticut Light Power Co. v. Dept. of Public Utility Control,219 Conn. 51, 57, 591 A.2d 1231 (1991).
Not only is it not the function of this court to supplant its judgment for that of the arbitration panel, in the absence of a transcript or a written decision this court lacks any factual basis to conclude that the arbitration panel erred when it decided that the essence of the collective bargaining agreement permits the town to promote an employee into an existing job classification without prior posting of a vacancy.
In the absence of convincing evidence that the arbitration award manifests an infidelity to its obligation, the court must a defer to the arbitration panel. The motion to set aside the arbitration award is denied and judgment is entered in accordance with the arbitration award.
Bryant, J.